UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ALFONSO SALINAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:19-CV-150 |
| | § | |
| SGT. LUIS M. RAMOS *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

In this prisoner civil rights action, Plaintiff Alfonso Salinas has sued four individuals: (1) Sergeant Luis M. Ramos, (2) Jose L. Macias, Jr., (3) Commander Jose A. Aguilera, Jr., and (4) Dr. Homero Sanchez. All four have moved to dismiss Plaintiff's lawsuit (Dkt. Nos. 52, 54). For the reasons below, Sergeant Ramos, Mr. Macias, and Commander Aguilera's motion (Dkt. No. 52) is **GRANTED IN PART** and **DENIED IN PART**. Dr. Sanchez's motion (Dkt. No. 54) is **DENIED**.

### I. BACKGROUND

**A. Defendant's Confinement in First-Floor Cells**

At this stage, the Court must accept all well-pleaded facts in the complaint as true. *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020). Plaintiff's first amended complaint alleges the following:

At all relevant times, Jose L. Macias was a mental health specialist employed by Webb County Jail (Dkt. No. 40 ¶ 10). Sergeant Luis M. Ramos was a classification officer at the Jail (*id.* ¶ 8). Commander Jose A. Aguilera, Jr. was commander of the

1

Jail's classification unit, which controls inmate housing (*id.* ¶ 9).

On or around July 9, 2019, Plaintiff arrived at the Jail as a pretrial detainee (*id.* ¶ 16). Plaintiff was initially housed in the Jail's third-floor residential cells (*id.* ¶ 17). Shortly after Plaintiff's arrival, Mr. Macias evaluated his mental health (*id.*). Following the evaluation, Mr. Macias directed Sergeant Ramos to place Plaintiff in a first-floor "holding cell" for observation (*id.* ¶¶ 18–19).

For at least two days, Plaintiff was held in first-floor Cell 110 (*id.* ¶ 26). Urine and feces "filled and coated" the cell's toilet and sink (*id.* ¶ 21). The cell's floor "was covered in excrement," and its walls "were smeared with a sludge of urine and feces" (*id.*). Because the toilet was clogged and inoperable, Plaintiff could not relieve himself (*id.* ¶ 24). The cell had no bed, so Plaintiff was forced to sleep on the excrement-covered floor (*id.* ¶ 23). The cell's "nauseating" smell prevented Plaintiff from eating, induced vomiting, and caused "debilitating headaches" (*id.* ¶ 25). Plaintiff immediately notified jailers of these conditions and frequently requested grievance forms and cleaning supplies (*id.* ¶ 22). Over the next three to four days, he was moved to three other first-floor cells (*id.* ¶ 27). Each was just as unsanitary as Cell 110 (*id.*).

While the above events occurred in 2019, affidavits from two other detainees show the first-floor cells remained filthy in 2021 (Dkt. Nos. 35-1, 35-2). Both detainees reported prolonged stays in cells smeared with human blood and feces in 2021 (*id.*).

## B. Withholding of Defendant's Psychiatric Medications

In 2002—about 17 years before Plaintiff's detention—Plaintiff was diagnosed with bipolar disorder, depression, and post-traumatic stress disorder (*id.* ¶ 33). Since

then, he has taken psychiatric medication to manage his symptoms (*id.*).

Dr. Sanchez is a psychiatrist who treats detainees at the Jail (*id.* ¶¶ 11, 33). After Plaintiff arrived at the Jail, Dr. Sanchez obtained Plaintiff's medical records and authorized the administration of his psychiatric medication (*id.* ¶ 33). Around September 15, 2019, Plaintiff was accused of giving this medication to another detainee (*id.* ¶¶ 35–36). Consequently, Dr. Sanchez orally ordered that Plaintiff not be given his psychiatric medication (*id.*). Plaintiff received neither a written incident report nor a disciplinary hearing (*id.* ¶ 35).

Over the next two months, Plaintiff submitted several grievance forms (*id.* ¶¶ 37, 42). Therein, he asked to speak with Dr. Sanchez, reported his deteriorating mental health, and requested medical attention (*id.*). The requests were denied (*id.*). In late November 2019, Plaintiff attempted suicide (*id.* ¶¶ 43–45). A few days later, Dr. Sanchez ordered the restoration of Plaintiff's psychiatric medicine (*id.* ¶ 46).

### C. Procedural History

On August 5, 2022, Plaintiff filed his first amended complaint (Dkt. No. 40). Of the pleading's original four claims, only three remain pending: (1) a Fourteenth Amendment conditions-of-confinement claim against Sergeant Ramos and Mr. Macias; (2) a Fourteenth Amendment supervisory liability claim against Commander Aguilera; and (3) a Fourteenth Amendment deprivation of medical care claim against Dr. Sanchez.[1] The defendants moved to dismiss these claims, and the Court heard

---

[1] The first amended complaint originally asserted a Fifth Amendment due process claim against Deputy Marshal John Doe (*see* Dkt. No. 40). The Court dismissed this claim with prejudice (Dkt. No. 45).

oral argument (Dkt. Nos. 52, 54, 58–61; Min. Ent. Feb. 9, 2023).

## II. LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss, a complaint must allege sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the alleged facts allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the court must accept the complaint's well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sewell*, 974 F.3d at 582. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ." *Twombly*, 550 U.S. at 556.

### B. Qualified Immunity

In their motion to dismiss, Sergeant Ramos, Mr. Macias, and Commander Aguilera raise the affirmative defense of qualified immunity (*see* Dkt. No. 52). "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, a plaintiff must show (1) "the defendant violated the

4

plaintiff's constitutional rights," and (2) "the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).

With respect to the second prong, "[t]he constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right." *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998). The Court must conduct its inquiry "in light of the specific context of the case." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)). "[U]nless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

### III. DISCUSSION

#### A. Conditions of Confinement Claims Against Sergeant Ramos and Mr. Macias

Under the Fourteenth Amendment, pretrial detainees have a right to be free from punishment and to be provided with basic human needs, such as medical care and protection from harm. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). Pretrial detainees may bring constitutional challenges under two theories: (1) conditions of confinement or (2) episodic acts or omissions. *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015). A plaintiff may plead "both alternative theories, and a court may properly evaluate each separately." *Id.* at 464. Here, Plaintiff asserts both a conditions-of-confinement claim and an episodic-acts-

5

or-omissions claim against Sergeant Ramos and Mr. Macias.[2]

### 1. *Episodic Acts or Omissions*

The Court begins with Plaintiff's episodic-acts-or-omissions claim. An episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions" causing the complained-of harm. *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). To state an episodic-acts-or-omissions claim, the plaintiff must show the defendant acted with subjective deliberate indifference. *Hare*, 74 F.3d at 647–48. A defendant acts with subjective deliberate indifference when he "knows of and disregards an excessive risk" of serious harm to a pretrial detainee. *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (quoting *Garza v. City of Donna*, 922 F.3d 626, 635 (5th Cir. 2019)). In other words, to establish deliberate indifference, a plaintiff must show (1) the defendant was aware of facts from which he could infer a substantial risk of serious harm existed, and (2) the defendant "actually drew that inference." *Id.* (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)). "[K]nowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Here, Plaintiff sufficiently alleges Sergeant Ramos and Mr. Macias acted with deliberate indifference. First, Plaintiff plausibly alleges that both Sergeant Ramos and Mr. Macias "were familiar with [the] first-floor cells and their conditions" (Dkt.

---

[2] While Plaintiff labels Count One a "Conditions of Confinement" claim, he also alleges that Sergeant Ramos and Mr. Macias acted with "deliberate indifferen[ce]" (Dkt. No. 40 ¶ 49). Deliberate indifference is an element of an episodic-acts-or-omissions claim. *Hare*, 74 F.3d at 647–48. It is not an element of a conditions-of-confinement claim. *Id.* at 645. Plaintiff's response confirms his intent to assert both theories of liability (Dkt. No. 58 at 4–5). The Court therefore construes Count One as asserting both an episodic-acts-or-omissions claim and a conditions-of-confinement claim.

No. 40 ¶ 18). As to Sergeant Ramos, Plaintiff alleges he "knew of Cell 110's terrible condition" because a "nauseating smell emanat[ed] from the cell into the hallway" (*id.* ¶ 21). The cell's windows also "allowed [Sergeant] Ramos and the corrections officers to see into the cell while passing by" (*id.*). Because the Texas Commission on Jail Standards (TCJS) requires face-to-face observation of all inmates at least once per hour, Sergeant Ramos and the corrections officers reporting to him "must have been aware" of Plaintiff's filthy cell conditions if they "complied with their regulatory obligations" (*id.*). Moreover, Plaintiff "immediately notified corrections officers that the cell was unacceptable for habitation" and "renewed his requests every time a corrections officer walked past" his cell (*id.* ¶ 22).

As to Mr. Macias, he was a mental health specialist who identified Plaintiff as having a mental health risk (*see id.* ¶¶ 17–19). Mr. Macias consequently ordered Plaintiff placed in the first-floor cells for observation (*id.*). While Mr. Macias himself "never came into the cell to observe" Plaintiff, the Court can reasonably infer that Mr. Macias was apprised of Plaintiff's filthy living conditions during this "observation" period (*id.* ¶ 19). If Mr. Macias had the authority to order at-risk detainees to the first floor for observation, it is reasonable to infer that he was involved in their observation and knew of their behavior, progress, and grievances. Based on these facts, Plaintiff has plausibly alleged Sergeant Ramos and Mr. Macias knew of the cells' conditions.

Plaintiff also adequately alleges his deplorable cell conditions posed a serious risk of harm (Dkt. No. 40 ¶¶ 21–27). A "sludge" of human waste covered the floor and walls, and excrement filled the sink and toilet (*id.* ¶ 21). Without a bed, Plaintiff was

7

forced to sleep on the excrement-covered floor (*id.* ¶ 23). Plaintiff could not relieve himself, as doing so would "add to the film of excrement he had to sleep on" (*id.* ¶ 24). Plainly, these alleged conditions posed a substantial risk of serious harm. *See Taylor v. Stevens*, 946 F.3d 211, 221–22 (5th Cir. 2019), *cert. granted, judgment vacated on other grounds sub nom.*, *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (finding "exposure to bodily waste" from cells "covered in urine and feces" posed an "obvious" risk of serious harm). Despite this obvious risk, Sergeant Ramos and Mr. Macias ordered Plaintiff's placement in the first-floor cells and took no action to ameliorate their conditions (Dkt. No. 40 ¶ 50).

Taken together, these facts plausibly allege Sergeant Ramos and Mr. Macias were deliberately indifferent to the excessive risk posed by the first-floor cell conditions. *See Hope v. Harris*, 861 F. App'x 571, 585 (5th Cir. 2021) (finding deliberate indifference plausible where plaintiff alleged defendant knew of unsanitary conditions—"which ha[d] an obvious risk of harm"—yet continued to subject plaintiff to those conditions). At this stage, Plaintiff has adequately pled an episodic-acts-or-omissions claim against Sergeant Ramos and Mr. Macias.

### 2. Conditions of Confinement

Plaintiff also asserts a conditions-of-confinement claim against Sergeant Ramos and Mr. Macias. To state a conditions-of-confinement claim, a plaintiff must show (1) a rule, restriction, intended condition or practice, or sufficiently extended or pervasive act or omission, (2) "which was not reasonably related to a legitimate government objective," (3) caused the constitutional violation. *Duvall v. Dallas Cnty.*,

8

631 F.3d 203, 207 (5th Cir. 2011) (quoting *Hare*, 74 F.3d at 645). A condition may reflect a *de facto* policy when "evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive . . . to prove an intended condition or practice.'" *Id.* (quoting *Shepherd*, 591 F.3d at 452). The violation must be more than *de minimis*—the plaintiff must show "a pervasive pattern of serious deficiencies." *Id.* at 208 (quoting *Shepherd*, 591 F.3d at 454). Proving such a pattern does not require providing "specific examples of other instances of detainees who suffered [a similar] fate." *Montano v. Orange Cnty.*, 842 F.3d 865, 876 (5th Cir. 2016). However, "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Shepherd*, 591 F.3d at 454. Plaintiffs face "a heavy burden" when attempting to prove a pattern. *Id.* at 452.

Here, Plaintiff has not plausibly alleged the existence of a condition or practice. Plaintiff bases his conditions-of-confinement claim on the defendants' "general or de facto" practice of placing at-risk inmates in the "uninhabitable first-floor cells" (Dkt. No. 58 at 11). To support this claim, Plaintiff alleges he resided in four equally squalid cells over the course of six days (*see* Dkt. No. 40 ¶¶ 21, 27). And based on two affidavits, these conditions persisted until June 2021 (*see* Dkt. Nos. 35-1, 35-2).

Because Plaintiff has not shown an extended or pervasive pattern of violations, he has failed to prove the existence of a *de facto* policy. First, the Court declines to consider the 2021 affidavits. To be sure, they are deeply troubling. Nonetheless, Plaintiff has provided no case law allowing courts to consider post-incident events to find a *de facto* policy, and the Court has located none. Where a court has considered

9

similar incidents to conclude a *de facto* policy existed, the plaintiff pointed to *prior* events. *See, e.g.*, *Duvall*, 631 F.3d at 208 (holding a *de facto* policy existed where the record showed "the County's awareness of the situation *preceded* [the detainee's] confinement, and that there had been serious outbreaks of MRSA in the [j]ail for at least three years *before* [the detainee's] arrival" (emphasis added)); *Cleveland v. Gautreaux*, 198 F. Supp. 3d 717, 738–39 (M.D. La. 2016) (finding claim plausible in part because plaintiffs pointed three prior detainee deaths). Because the law is unsettled on this matter, the Court will not consider the 2021 events.

    Second, considered alone, Plaintiff's six-day stay in four unhabitable cells does not plausibly establish a pervasive pattern. *Cf. Dotson v. Bexar Cnty. Hosp. Dist.*, No. 5:19-cv-83, 2019 WL 6311375, at *5 (W.D. Tex. Nov. 25, 2019) (finding claim plausible where plaintiffs alleged detainee received grossly inadequate medical care "over five months and through dozens of personnel members"); *Cleveland*, 198 F. Supp. 3d at 739 (same, in part because complaint detailed jail's inadequate treatment over a period of several weeks). Moreover, while a plaintiff may point to government reports or testimony from staff to establish a *de facto* policy, Plaintiff has not done so here. *See Feliz v. El Paso Cnty.*, 441 F. Supp. 3d 488, 498–99 (W.D. Tex. 2020) (finding claim plausible where plaintiff cited a TCJS report noting inadequate jail conditions); *Shepherd*, 591 F.3d at 453 (holding plaintiff "demonstrate[d] the existence of an unlawful condition" where he "presented extensive independent evidence" of the jail's violations, including two government-authored reports and affidavits from jail employees).

Because Plaintiff has not adequately alleged an unconstitutional condition existed as of July 2019, his claim against Sergeant Ramos and Mr. Macias cannot move forward on this theory. Sergeant Ramos and Mr. Macias's motion to dismiss (Dkt. No. 52) is therefore **GRANTED** as to Plaintiff's conditions-of-confinement claim.

**B. Supervisory Liability Claim Against Commander Aguilera**

"[L]iability under the doctrine of respondeat superior is not cognizable in § 1983 actions." *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 286 (5th Cir. 2002). However, a supervisor may be held liable for a constitutional violation where (1) he failed to train or supervise officers, (2) the failure to train or supervise had a causal connection to the constitutional violation, and (3) the failure to train or supervise constitutes deliberate indifference to constitutional rights. *Id.* To state a failure-to-train claim, "a plaintiff must allege with specificity how a particular training program is defective." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir.2005)).

To be deliberately indifferent, the supervisor must have known a substantial risk of serious harm existed and disregarded that risk. *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Failure to train constitutes deliberate indifference where the inadequacy of training was so obvious, and a violation of constitutional rights was so likely, that the supervisor was deliberately indifferent to the need for more training. *Cozzo*, 279 F.3d. at 287. A showing of deliberate indifference typically requires a pattern of similar violations.

*Id.* at 286–87. To establish a pattern, a plaintiff must point to "prior acts" that are "fairly similar to what ultimately transpired." *Davis*, 406 F.3d at 383.

Here, Plaintiff alleges the following: As commander of the housing unit, Commander Aguilera oversaw inmates' housing and their confinement conditions (Dkt. 40 ¶ 54). Commander Aguilera "was aware or should have been aware" of the first-floor cell conditions (*id.* ¶ 55). He also supervised Sergeant Ramos, a classifications officer (*id.* ¶ 54). Commander Aguilera failed to train or supervise Sergeant Ramos and other Jail staff "on the proper minimal standards necessary to house detainees" (*id.* ¶ 56). As a result of this failure, "there has been a pattern of similar constitutional violations" (*id.* ¶ 57). Finally, because Commander Aguilera failed to train or supervise Sergeant Ramos, "Plaintiff was housed in unconstitutional conditions" (*id.* ¶ 58).

Plaintiff has not plausibly shown Commander Aguilera acted with deliberate indifference. First, alleging Commander Aguilera "should have been aware" of the first-floor cell conditions cannot show deliberate indifference (*id.* ¶ 55). To plausibly allege deliberate indifference, Plaintiff must allege Commander Aguilera had *actual* knowledge of the cells' conditions and the risk they posed. *See Davis*, 406 F.3d at 381. He has not done so.

Second, Plaintiff has not adequately alleged a pattern of constitutional violations from which Commander Aguilera's deliberate indifference could be inferred. Plaintiff states a "pattern of similar constitutional violations" existed because detainees endured similar conditions in 2021—two years after Plaintiff

12

endured such conditions (*see* Dkt. Nos. 35-1, 35-2, 40, 58). But to show a "pattern of similar violations," Plaintiff must point to *prior* similar acts. *Davis*, 406 F.3d at 383; *cf. Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011) (stating that, in a municipality failure-to-train claim, "contemporaneous or subsequent conduct cannot establish a pattern of violations"). Again, Plaintiff has not done so.

Without pointing to prior instances, Plaintiff has not alleged "specific facts that rise above the speculative level."[3] *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022); *see Goodman*, 571 F.3d at 396; *Skinner v. Ard*, No. 3:19-cv-66, 2020 WL 699740, at *4, *9 (M.D. La. Feb. 11, 2020). Plaintiff's pleadings therefore fail to show Commander Aguilera acted with deliberate indifference.

Because Plaintiff's claim fails on the deliberate indifference prong, Commander Aguilera's motion to dismiss (Dkt. No. 52) is **GRANTED** as to Plaintiff's supervisory liability claim against him.

### C. Qualified Immunity as to Sergeant Ramos and Mr. Macias

Because Plaintiff has plausibly alleged an episodic-acts-or-omissions claim against Sergeant Ramos and Mr. Macias, *see supra* Section III.A.1., the Court must assess whether they enjoy qualified immunity.

Qualified immunity protects officers if their alleged act did not violate a clearly established constitutional right. *Sanchez*, 139 F.3d at 466. In July 2019, it was clearly established that housing detainees in cells covered in human waste violated the

---

[3] Under the narrow "single incident exception," some plaintiffs may establish a failure-to-train-or-supervise claim without pointing to prior instances. *Cozzo*, 279 F.3d. at 287. Because Plaintiff does not argue this exception should apply, the Court does not address it (*see* Dkt. No. 58 at 12–15).

Constitution. *See Taylor*, 141 S. Ct. at 53–54. In *Taylor v. Riojas*, the Supreme Court vacated a finding of qualified immunity where the plaintiff, Mr. Trent Taylor, was held in unsanitary conditions for six days. *Id.* There, feces covered the floor, ceilings, walls, and water faucet. *Id.* at 53. Mr. Taylor did not eat or drink for four days because he feared contamination. *Id.* The cell lacked a bunk, so he slept naked in sewage. *Id.* On this record, the Supreme Court held "any reasonable officer should have realized that [these] conditions of confinement offended the Constitution." *Id.* at 54.

*Taylor* is squarely on point. Plaintiff was kept in similarly inhumane conditions for roughly the same amount of time as Mr. Taylor (*see* Dkt. No. 40 ¶¶ 21–27). Plaintiff and Mr. Taylor suffered nearly identical harm: they could not eat, they could not relieve themselves, and they slept in filth (*see id.* ¶¶ 23–25). Crucially, the facts underlying *Taylor* occurred in 2013. *Taylor*, 141 S. Ct. at 53. Thus, the right not to be held in such conditions was clearly established as of 2013—well before Plaintiff's 2019 confinement. As in *Taylor*, "any reasonable officer should have realized" that holding Plaintiff in these conditions violated the constitution. *Id.* at 54.

In sum, Plaintiff has sufficiently stated an episodic-acts-or-omissions claim against Sergeant Ramos and Mr. Macias. *See supra* Section III.A.1. The right at issue was clearly established at the time of Plaintiff's confinement. Therefore, Sergeant Ramos and Mr. Macias are not entitled to qualified immunity at this time. Their motion to dismiss (Dkt. No. 52) is **DENIED** as to Plaintiff's episodic-acts-or-omissions claim.

**D. Deprivation of Medical Care Claim Against Dr. Sanchez**

Under the Fourteenth Amendment, pretrial detainees have a constitutional right "not to have their serious medical needs met with deliberate indifference." *Kelson*, 1 F.4th at 417 (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)). An episodic act or omission does not violate a detainee's right to medical care unless the official acted with subjective deliberate indifference. *Hare*, 74 F.3d at 647–48. "[M]ere disagreement with the treatment provided" does not constitute deliberate indifference. *Easter*, 467 F.3d at 464. Rather, a defendant acts with deliberate indifference if he "knows of and disregards an excessive risk" to a pretrial detainee's safety. *Kelson*, 1 F.4th at 417 (quoting *Garza*, 922 F.3d at 635). A plaintiff can establish deliberate indifference by showing the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly" or otherwise "clearly evince[d] a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations omitted). "[A] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Id.* at 345 n.12. Psychological or psychiatric treatment can constitute a serious medical need. *Hare*, 74 F.3d at 642.

Here, Plaintiff has plausibly pled a deprivation of medical care claim.[4]

---

[4] Dr. Sanchez also challenges the Court's subject matter jurisdiction (*see* Dkt. No. 54 at 5–6). Because this claim arises under the Fourteenth Amendment and federal law, the Court has jurisdiction to hear this lawsuit. *See* 28 U.S.C. § 1331; *Belcher v. Judd*, No. 3:07-cv-348, 2007 WL 2375081, at *1 (N.D. Tex. Aug. 20, 2007) (denying a Rule 12(b)(1) motion to dismiss because plaintiff plausibly stated a § 1983 claim by alleging jail personnel withheld necessary psychiatric medication).

Accepting Plaintiff's allegations as true—as the Court must at this stage—Dr. Sanchez had access to Plaintiff's medical records and initially authorized the administration of Plaintiff's medication (Dkt. No. 40 ¶¶ 33, 41). Later, as a disciplinary measure, Dr. Sanchez discontinued the treatment (*id.* ¶¶ 35–36). He did not implement an alternative, supervised means of administering the medication (*id.* ¶ 42). Dr. Sanchez also received Plaintiff's multiple grievance forms, which reported Plaintiff's declining mental health (*id.*). Given Dr. Sanchez's professional training, the grievance forms notified him that Plaintiff faced a substantial risk of mental health deterioration and suicide (*id.*). Despite knowing this substantial risk existed, Dr. Sanchez ignored it until it was almost too late—when Plaintiff attempted suicide (*id.* ¶¶ 44–46).

In sum, Plaintiff alleges Dr. Sanchez denied him psychiatric medication despite knowing (1) Plaintiff needed his medication, (2) Plaintiff repeatedly requested his medication, and (3) he faced a substantial risk of serious harm without this care (*see id.* ¶¶ 35, 41–42). As alleged, Plaintiff has plausibly pled an inadequate medical care claim against Dr. Sanchez. *See Converse v. City of Kemah*, 961 F.3d 771, 775 (5th Cir. 2020) (finding a plausible constitutional violation where plaintiffs alleged defendants "had subjective awareness that [a detainee] was at substantial risk of suicide" and were "deliberately indifferent to this risk"); *Belcher v. Judd*, No. 3:07-cv-348, 2007 WL 2375081, at *1 (N.D. Tex. Aug. 20, 2007) (same, where plaintiff alleged "he was denied the medication necessary to treat his bipolar disorder").

Notwithstanding Plaintiff's allegations, Dr. Sanchez urges dismissal. He

16

believes Plaintiff failed to precisely state how Dr. Sanchez knew of Plaintiff's grievances (*see* Dkt. No. 54 at 10). Without this precise set of facts, Dr. Sanchez argues Plaintiff has not alleged deliberate indifference (*see id.*). But at this stage, Plaintiff need not plead facts particularly within the defendant's knowledge. *Eachus v. Steelman*, No. 4:20-cv-324, 2021 WL 857988, at *18 (E.D. Tex. Mar. 8, 2021). Consequently, Dr. Sanchez's motion to dismiss (Dkt No. 54) is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Sergeant Ramos, Mr. Macias, and Commander Aguilera's motion (Dkt. No. 52) is **GRANTED IN PART** and **DENIED IN PART**. Dr. Sanchez's motion (Dkt. No. 54) is **DENIED**. Plaintiff's conditions-of-confinement claim against Sergeant Ramos and Mr. Macias is **DISMISSED WITH PREJUDICE**. Likewise, Plaintiff's supervisory liability claim against Commander Aguilera is **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to terminate Jose A. Aguilera, Jr. from this action.

The following claims remain pending: (1) Plaintiff's episodic-acts-or-omissions claim against Sergeant Ramos and Mr. Macias and (2) Plaintiff's deprivation of medical care claim against Dr. Sanchez. For these remaining claims, the Magistrate Judge is **ORDERED** to convene a Rule 16 management conference as soon as possible.

It is so **ORDERED**.

**SIGNED** March 6, 2023.

*/s/ Marina Garcia Marmolejo*
Marina Garcia Marmolejo
United States District Judge